ALBERTO SANDOVAL
(Name)
480 ALTA ROAD
(Address)
SAN DIEGO, CA 92179
(City, State, Zip)
AM0186
(CDCR / Booking / BOP No.)

U.S. District Court
Southern District of California
Received

AUG 2 2 2019

Pages: 34
Time: 1:30 PM
Initials:

# United States District Court
## Southern District of California

ALBERTO SANDOVAL, _____ ,
(Enter full name of plaintiff in this action.)

                                      Plaintiff,

v.

DAVID GULDSETH, M.D. _____ ,
ROMAN B. CHAM, M.D. _____ ,
K. TOOR, M.D. _____ ,
IKWINDER K. SINGH, M.D.; TIN-AUNG SHWE, M.D.,
(Enter full name of each defendant in this action.)
                                      Defendant(s).

**'19 CV 1584 BAS RBB**

Civil Case No. _____
(To be supplied by Court Clerk)

Complaint under the
Civil Rights Act
42 U.S.C. § 1983

## A. Jurisdiction

Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983. If you wish to assert jurisdiction under different or additional authority, list them below.
  28 U.S.C. § 1331; 28 U.S.C. § 1391 _____ .

## B. Parties

1. Plaintiff: This complaint alleges that the civil rights of Plaintiff, Alberto Sandoval _____
                                                              (print Plaintiff's name)
_____ , who presently resides at Richard J. Donovan Correctional _____
                                                      (mailing address or place of confinement)
Facility, 480 Alta Road, San Diego, CA 92179 _____ , were violated by the actions of
the below named individuals. The actions were directed against Plaintiff at Richard J. Donovan
Correctional Facility _____ on (dates) 4/27/18 , _____ , and _____ .
  (institution/place where violation occurred)            (Count 1)        (Count 2)        (Count 3)

§ 1983 SD Form
(Rev. 8/15)

2. <u>Defendants</u>: (Attach same information on additional pages if you are naming more than 4 defendants.)

Defendant ___David Guldseth, M.D.___ resides in ___San Diego___,
(name)                                                    (County of residence)
and is employed as a ___Physician & Surgeon___. This defendant is sued in
(defendant's position/title (if any))
his/her ☒ individual ☒ official capacity. (Check one or both) Explain how this defendant was acting under
color of law: ___Defendant Dr. David Guldseth, M.D. is employed as a Staff Physician___
___by the California Correctional Health Care Services to provide Medical Care___
___to Inmates in CDCR and to inmates at RJD Correctional Facility.___

Defendant ___Roman B. Cham, M.D.___ resides in ___San Diego___,
(name)                                                    (County of residence)
and is employed as an ___Orthopedic Surgeon/Specialist___. This defendant is sued in
(defendant's position/title (if any))
his/her ☒ individual ☒ official capacity. (Check one or both) Explain how this defendant was acting under
color of law: ___Defendant Dr. Roman B. Cham, M.D., is employed as an Off-Site Ortho-___
___pedic Surgeon and Specialist by the California Correctional Health Care Services___
___to consult & to provide Surgical Services to Inmates in CDCR and RJD Corr. Fac.___

Defendant ___K. Toor___ resides in ___Madera___,
(name)                                                    (County of residence)
and is employed as a ___Physician & Surgeon___. This defendant is sued in
(defendant's position/title (if any))
his/her ☒ individual ☒ official capacity. (Check one or both) Explain how this defendant was acting under
color of law: ___As part of the Medical Authorization Review Committee (MAR) and is___
___employed as a Staff Physician by the California Correctional Health Care Services___
___to provide Medical Care to Inmates in CDCR and Valley State Prison as CME.___

Defendant ___Ikwinder K. Singh___ resides in ___Madera___,
(name)                                                    (County of residence)
and is employed as a ___Staff Physician___. This defendant is sued in
(defendant's position/title (if any))
his/her ☒ individual ☒ official capacity. (Check one or both) Explain how this defendant was acting under
color of law: ___Defendant Ikwinder K. Singh, M.D., is employed as a Staff Physician___
___by the California Correctional Health Care Services to provide Medical Care___
___to Inmates in CDCR and to inmates at Valley State Prison.___

Defendant Tin-Aung Shwe resides in Madera, and is employed as a Staff Physician.
This Defendant is sued in his/her Individual and Official Capacity. Defendant
Dr. Tin-Aung Shwe, M.D., is employed by the California Correctional Health Care
Services to provide Medical Care to Inmates in CDCR and to Inmates at Valley
State Prison.

1  | Alberto Sandoval
   | CDCR # AM0186 / E24-C104-03LOW
2  | RICHARD J. DONOVAN CORRECTIONAL FACILITY
   | 480 Alta Road
3  | San Diego, CA 92179

4  | In Propria Persona

5

6  |              UNITED STATES DISTRICT COURT

7  |              SOUTHERN DISTRICT OF CALIFORNIA

8

9  | ALBERTO SANDOVAL,                    Civil Case No. _____

10 |           Plaintiff,                 COMPLAINT UNDER THE CIVIL
   |                                      RIGHTS ACT 42 U.S.C. § 1983,
11 |     v.                               FOR INJUNCTIVE RELIEF,DAMAGES
   |                                      AND DEMAND FOR JURY TRIAL
12 | DAVID GULDSETH,M.D.,Physician &
   | Surgeon at Richard J. Donovan
13 | Correctional Facility; ROMAN B.
   | CHAM,M.D.,Off-Site Consultant &
14 | Orthopedic Surgeon; K. TOOR, M.D.,
   | Chief Physician & Surgeon(A) at
15 | Valley State Prison; IKWINDER K.
   | SINGH,M.D.,Physician at Valley
16 | State Prison; TIN-AUNG SHWE,M.D.,
   | Physician at Valley State Prison,
17 | and all named are sued in both
   | their Individual and Official
18 | Capacities,
19 |           Defendants.      /

20 |     This is a Civil Rights Action pursuant to 42 U.S.C. § 1983 for Injunctive

21 | Relief,Damages,and a Demand for a Jury Trial for Defendants' Deliberate Indifference

22 | to Plaintiff's Serious Medical Needs in violation of the Eighth Amendment Rights

23 | guaranteed to him under the United States Constitution.

24 |                          I. JURISDICTION

25 |     1. This Court has jurisdiction over Plaintiff's Claims under 42 U.S.C. § 1983

26 | and under 28 §§ 1343(a)(3),1331 and 1391(b).

27 |     2. The events giving rise to the claims against Defendants David Guldseth,M.D.

28 | and Roman B. Cham,M.D. in this Complaint arose in the County of San Diego,CA./

                                    1

3. Therefore, venue is proper under 28 U.S.C. § 1391(b)(2).

4. The events giving rise to the alleged claims against Defendants K. Toor,M.D., Ikwinder K. Singh,M.D.,and Tin-Aung Shwe,M.D.,arose in the County of Madera. Thus, if filed in improper Judicial District,the Court may dismiss the action,on timely and proper objection,or in the interest of justice,may transfer the case to a District in which Action could be brought under 28 U.S.C. § 1406(a).

## II. PLAINTIFF

5. Plaintiff [Alberto Sandoval], CDCR # AM0186,is and at all times mentioned material herein, a Prisoner of the State of California,and in the custody of the Department of Corrections and Rehabilitation [hereinafter CDCR].

6. Plaintiff is currently confined at the Richard J. Donovan Correctional Facility (RJD) located in San Diego, CA.

7. Plaintiff, prior to February 2,2017,he was confined at Valley State Prison (VSP) located at Chowchilla, CA.

8. Plaintiff at all times during his incarceration, has relied on the Medical Care Providers employed by the California Correctional Health Care Services to provide Medical Care to Inmates in CDCR's Prisons,for his Medical Care of his Needs.

## III. DEFENDANTS

9. Defendant David Guldseth,M.D.,was and at all times mentioned material herein and was employed as a Physician & Surgeon by the California Correctional Health Care Services to provide Medical Care to Inmates at the Richard J. Donovan Correct-ional Facility.

10. Defendant David Guldseth,M.D.,is a properly trained and Licensed Medical Doctor who is legally responsible for the Medical Care of Inmates at RJD,at all times mentioned.

11. Defendant David Guldseth,M.D.,at all times mentioned material herein was acting under color of state law,in the course and scope of his employment,and is sued in both his Individual and Official Capacities.

2

12. Defendant Roman B. Cham,M.D.,was and all times mentioned material herein and was employed as an Orthopedic Surgeon and Off-Site Consultant by the California Correctional Health Care Services to provide Specialized Orthopedic Services to inmates at the Richard J. Donovan Correctional Facility.

13. Roman B. Cham,M.D.,is a properly trained and Licensed Medical Doctor and specially trained as an Orthopedic Surgeon who is legally responsible for Orthopedic Specialty Services of Inmates at RJD,at all times mentioned.

14. Defendant Roman B. Cham,M.D., at all times mentioned material herein  was acting under color of state law,in the course and scope of his employment,and is sued in both his Individual and Official Capacities.

15. Defendant K. Toor,M.D.,was and at all times mentioned material herein and was employed as a Physician & Surgeon by the California Correctional Health Care Services to provide Medical Care to Inmates at Valley State Prison.

16. Defendant K. Toor,M.D., is a properly trained and Licensed Doctor who is legally responsible for the Medical Care of Inmates at VSP,at all times mentioned.

17. Defendant K. Toor,M.D.,at all times mentioned material herein was acting under color of state law,in the course and scope of his employment,and is sued in both his Individual and Official Capacities.

18. Defendant Ikwinder K. Singh,M.D.,was and at all times mentioned material herein and was employed as a Staff Physician by the California Correctional Health Care Services to provide Medical Care to Inmates at Valley State Prison.

19. Defendant Ikwinder K. Singh,M.D., is a properly trained and Licensed Doctor who is legally responsible for the Medical Care of Inmates at VSP,at all times mentioned.

20. Defendant Ikwinder K. Singh,M.D.,at all times material herein was acting under color of state law,in the course and scope of his employment,and is sued in both his Individual and Official Capacities.

3

21. Defendant Tin-Aung Shwe,M.D.,was and at all times mentioned material herein and was employed as a Staff Physician by the California Correctional Health Care Services to provide Medical Care to inmates at Valley State Prison.

22. Defendant Tin-Aung Shwe,M.D., is a properly trained and Licensed Doctor who is legally responsible for the Medical Care of Inmates at VSP,at all times mentioned.

23. Defendant Tin-Aung Shwe, M.D., at all times mentioned material herein was acting under color of state law,in the course of his employment,and is sued in both his Individual and Official Capacities.

STATEMENT OF FACTS

**✶ RIGHT KNEE INJURY**

24. Plaintiff currently suffers from a large complex tear of the medial memis-cus,which consists of a taer involving the entire body and posterior horn of the area with extension to the inferior articular surface and free edge; Arthritis of the Patellofemoral Joint with thickness Chondromalacia on both sides of the Joint severely affecting the medial compartment of the knee; Region of avascular necrosis involving the posterior aspect of the medial femoral condyle,broad areas of full or partial thickness chondromalacia involving the weightbearing surface of the medial femoral condyle with associated articular irregularity and subcortical edema;and Joint Effusion. In short, significant degenerative joint disease with significant full-thickness cartilage loss involving the medial compartment ,aswell as the medial joint line.

25. Plaintiff suffers from extreme pain palpated to the patellofemoral joint aswell as the medial compartment,significant discomfort with range of motion leading to extreme pain at 60-70 degrees of flexion.

26. Plaintiff's Right Knee Injury has resulted in initially requiring the use of a Walker to assist him in his limited walking,and has required the use of a Wheelchair for his extreme Mobility Limitations. Assignment to designation as

4

Disability Impacting Placement Intermittent Wheelchair (DPO) status [ADA Designation].

27. Plaintiff suffers from persistent pain and swelling to the Right Knee, which hinders his ability to walk and has created sporatic sleepless patterns.

28. Per Medical Opinion by Dr. John Casey,M.D.,Orthopedic Surgeon at the San Joaquin General Hospital Consultation Notes dated January 12,2016,which states," I really believe the only treatment that is going to alleviate his discomfort is going to be a right total knee replacement."

29. Plaintiff's disability substantially limits one of his major life's acti-vities-to wit, walking,standing,lifting,bending,and working as defined in **42 U.S.C. § 12102 et seq.**

30. Plaintiff has had futile nonoperative options and/or procedures done to treat his Right Knee Injury as a precondition and precursor to a Total Knee Replace-ment Surgery.

31.Which includes,but not limited to,Kenalog Injections on multiple occasions, Physical Therapy,X-Rays on multiple occasions and an MRI on November 10,2015.

32. Plaintiff has been recommended for a Right Total Knee Replacement Surgery on January 12,2016 by Dr. John Casey,M.D.and on April 26,2018 by Defendant Dr.Roman B. Cham,M.D.; who during his examination concluded that Plaintiff had pain and crepitus with range of motion of his knee and advanced tri-compartment DJD on X-Ray.

33. Plaintiff has been ineffectively treated with nonsteroidal anti-inflamatory medications opioid medications for his pain symtoms.

34. Defendants' delay in providing effective treatment and their denial of the twice recommended Right Total Knee Replacement Surgery that can effective re-lieve the extreme pain being suffered by Plaintiff was based on improper motives when applying CDCR Policy to ultimately avaoid paying for it,resulted in Plaintiff's unnecessary pain and suffering and worsoning condition.

///

5

35. Defendants' refusal to authorize Plaintiff's Right Total Knee Replacement Surgery against the twice Specialist Recommendations relying on the increased risk of Periprosthetic Joint Infection due to Plaintiff's obesity that on May 3,2018 was rated at minimal to moderate risk and subsequently cleared for the scheduled Right Knee Total Replacement Surgery,on the basis that it was untenable for Plaintiff, leaving Plaintiff in extreme pain and crippled for life ,were medically unacceptable.

36. Plaintiff's Right Knee Injury has been ongoing and defendants' delay in affording Plaintiff the twice Recommended Right Knee Total Replacement Surgery has resulted in substantial harm by the refusal of sound treatment.

�* DEFENDANT DAVID GULDSETH,M.D.

37. Defendant Guldseth,M.D.,on February 8,2017,as Plaintiff's Primary Care Provider (PCP), saw Plaintiff for a 7-Day followup Consultation as a new arrival on E-Facility on February 2,2017 from VSP.

38. Defendant Guldseth,M.D.,noted swelling in the Right Knee,and Plaintiff's complaints of bilateral knee pain which was greater at the Right Knee with derange-ment being chronic,adding that Right Knee Surgery had been denied recent to that date.

39. Defendant Guldseth,M.D.,relied on his own non-specialized conclusion that Plaintiff's condition could be treated with pain medications rather than the Re-commendations of Plaintiff's treating Specialist [Orthopedic]Dr. John Casey,M.D., who on January 12,2016,in his Medical Opinion stated,"I really believe the only treatment that is going to alleviate his [Plaintiff]discomfort is going to be a right total knee replacement."

40. On February 28,2017, Plaintiff initiated his complaints to his need for a Right Knee Total  Replacement Surgery  and need to be referred back to an Orthoped-ic Surgeon to treat his Knee Injury by submitting a CDC 7362-Health Care Services Request Form [#5729477].

6

41. On March 23,2017, Plaintiff was seen by Defendant Guldseth,M.D.,specifically in regards to Plaintiff's Right Knee Surgery concerns,where he notes reviewing the Orthopedic Notes dated January 12,2016 generated by Dr, John Casey,M.D.,Orthopedic Specialist from the San Joaquin General Hospital.

42. Defendant Guldseth,M.D.,notes Plaintiff's inability to walk a distance of a block without pain. His inability to rest and sleep at night due to the pain,and Dr. John Casey,M.D.'s recommendation for a Right Total Knee Replacement Surgery in the near future.

43. Defendant Guldseth,M.D.,then proceeded to note the findings in Plaintiff's MRI Scan that showed significant Degenerative Joint Disease with significant full thickness Cartilage Loss involving the Medial Compartment,aswell as the Medial Joint Line. Adding that the Physical Examination by Dr. John Casey,M.D. found significant discomfort with range of motion from -5 degrees full extension to 60-70 degrees of flexion and severe pain to the Patellofemoral Joint,aswell as to the Medial Compart-ment.

44. Defendant Guldseth,M.D.,then proceeded to divert from his responsibility to provide the recommended care for Plaintiff's serious and painful Right Knee Condition.

45. Defendant Guldseth,M.D.,instead repeated the sequence of prerequisite set of test (X-Rays,etc.) to delay any realistic approach in treating Plaintiff's Right Knee Condition by simply refusing to refer Plaintiff to an Orthopedic Specialist to seek a second Opinion until Plaintiff met an unrealistic weight loss expectation of 50 lbs.,when unable to even walk,prior to resubmitting a Referral for a total right knee replacement surgery as Plaintiff's Right Knee Condition warrants and/or requires.

46. On April 26,2017, plaintiff was again seen by Defendant Guldseth,M.D.,and when Plaintiff complained of his Right Knee Condition,Defendant simply repeated his delay in treatment by repeating an Order for another X-Ray of the Right Knee and re-peated Physical Therapy which in the past was already proven ineffective for Plaintiff

painful right knee condition.

47. On May 7,2017, Plaintiff submitted a Health Care Services  Request Form, CDC 7362 (# 5355164) complaining that Defendant Guldseth,M.D.,was in fact was working backwards in the sequence of care rather than a continuous course of treatment by simply re-ordering an X-Ray for the Right Knee Condition rather than acknowledging the results already found in Plaintiff's MRI Scan and the Recommendation by Dr. John Casey,M.D. on January 12,2016 that plaintiff's only treatment to alleviate his pain is a Total Right  Knee Replacement.

48. On June 16,2017, Plaintiff again submitted a Health Care Services Request Form CDC 7362 (#5355456) complaining that his Right Knee Condition was worsening & not being addressed as Recommended by Dr. John Casey,M.D. on January 12,2016.

49. Plaintiff continued to complain of his Right Knee Condition and suffering of pain to Defendant Guldseth,M.D. at every subsequent Medical Consultation until ultimately he was referred to see Defendant Roman B. Cham,M.D.,Orthopedic Specialist.

50. Plaintiff was seen by Defendant Roman B. Cham,M.D. in January of 2018, approximately a Year after first seeing Defendant Guldseth,M.D. on February 8,2017.

51. This delay in seeing an Orthopedic Specialist for his Right Knee Condition resulted in unnecessary pain and suffering by Plaintiff without it even being attended to by an Off-Site Specialist rather than Defendant Guldseth,M.D.,a non-specialist Physician who simply denied the Specialist [Dr. John Casey,M.D.] Recommendation for a Total Right Knee Replacement,not because it was not medically indicated,but, only on the basis that because of Plaintiff's weight,and his knowledge of Plaintiff's eventual Release from Prison and substantial delay would avoid eventually paying for it relying  on that Plaintiff would Parole in the near future.

52. On April 26,2018, Plaintiff was seen by Defendant Roman B. Cham,M.D. in a Pre-Operative Visit,where Defendant Cham,M.D. reviewed and discussed Plaintiff's Medical History of MRSA Infection,Diabetes,and Obesity with Plaintiff.

53. Defendant Cham,M.D.,addressed the risk of complications with the Surgery,including Infection. Instructed Plaintiff to stop using Morphine for his severe pain symptoms,and reason being it would be more difficult to control after the Surgery if not stopped Pre-Op. Recommended Plaintiff lose weight prior to the gaining of Consent from Plaintiff to proceed with the Recommendation and Surgery.

54. At no time did Defendant Cham,M.D., state to Plaintiff,nor make a written note on his Notes that he would not proceed with the Total Right Knee Replacement Surgery unless Plaintiff first lose 50 lbs. and wean off his Morphine Pain Treatment permantly as Defendant Guldseth,M.D. exaggerated and interposedwith when seeking authorization and medical clearance by Prison's Physician Staff.

55. In fact,Defendant Roman B. Cham,M.D., conducted all Pre-Op Preperations, including NARES CULTURE test,LAB Test ,and arrangements for the Surgery to be performed on May 9,2018 at the Alvarado Hospital Medical Center.

56. On April 27,2018, Plaintiff was seen by Defendant Guldseth,M.D.,and for Medical Clearance prior to the Surgery.

57. Defendant Guldseth,M.D.,made the unqualified determination that the Surgery would not be appropiate until Plaintiff loses 50 lbs. and comes off the Morphine Pain Treatment. He then proceeded to cancel the Surgery scheduled for May 9,2018 until  Plaintiff loses the weight.

58. Defendant Guldseth,M.D.,dismissed all the complaints from Plaintiff as to his pain and suffering,all Diagnostic test reflecting Plaintiff's Right Knee Condition, and the Recommendation that a Total Right Knee Replacement would be the only remedy to alleviate Plaintiff's extreme pain and Right Knee Condition,by both Dr. John Casey, M.D.,Orthopedic Specialist on January 12,2016 and Defendant Dr. Roman B. Cham,M.D. ,Orthopedic Specialist on April 26,2018.

59. On May 3,2018,approximately (6) days after Plaintiff was seen by Defendant Guldseth,M.D. on April 27,2018,Plaintiff was seen by Dr. Jong S. Lee,M.D.,Physician

9

& Surgeon for Right Knee Total Replacement Pre-Op.

60. In his Progress Notes,Dr. Lee,M.D.,noted that Plaintiff was being informed of the up and coming Surgery in the next week,and that Plaintiff had completed Pre-Op Laboratory Test,Chest X-Rays and an EKG.

61. As the Assessment/Plan, Dr.Lee,M.D. noted Plaintiff was scheduled for Right Knee Total Replacement.Pre-Op instructions were given,and for Plaintiff to disconti-nue the Aspirin and Nonsteroidal Anti-Inflamatory Drugs 1 Week prior to the Surgery. Noting that Plaintiff X-Ray findings were Negative,EKG was Normal and Chemical Panel CBC were within Normal Limits.

62. Dr. Lee,M.D., noted that Plaintiff **was clear for Surgery** with a minimal to moderate risk due to or morbid obesity otherwise or left test X-Ray,EKG were within normal limit. At no time was it ever mentioned that Plaintiff's Surgery was cancelled due to his Obesity. Nor does Defendant Roman B. Cham,M.D.'s Physician's Progress Notes dated April 26,2018 and which was recieved by Defendant Guldseth,M.D. state that Plaintiff was required to first lose 50 lbs. and stop the Morphine Pain Treatment before he would perform the Surgery. This Document was recieved on May 9,2018 by RJD.

63. This Document [Physician's Progress Notes was recieved by Defendant Guldseth, M.D. on April 27,2018,and stated:" Ortho-Pre-Op- Patient advised as to risks of Surgery (Infection,MRSA),Patient told to stop Morphine,and needs Medical Clearance." Nowhere on the Document does it state that Plaintiff must first lose 50 lbs. as stated by Defendant Guldseth,M.D.

64. On April 28,2018, Plaintiff filed a Health Care Grievance CDCR 602 HC, [Log # RJD HC 18001595] complaining of Defendant Guldseth,M.D.'s denial of Medical Clearance and failure to follow the Specialist Recommendation.

65. After the filing of the Health Care Grievance, on May 21,2018, RN Debra Barrett contacted Defendant Roman B. Cham,M.D.'s Office Manager requested that Defend-ant Cham,M.D. send an Addendum specifically indicating he [Defendant Cham,M.D.] had

had cancelled the Surgery rather than Defendant Guldseth,M.D.

66. This Document was recieved on May 21,2018, and reviewed by Defendant Guldseth,M.D. prior to being placed in Plaintiff's Medical File.

67. Plaintiff was then seen by Defendant Guldseth,M.D. and RN Barrett to be told that Defendant Roman B. Cham,M.D. did not consider Plaintiff a good candidate for Surgery until Plaintiff lost 50 lbs. and was off the Morphine Pain Treatment,on May 31,2018.

68. Plaintiff requested a second Opinion,and was denied by Defendant Guldseth, M.D. even when in fact Plaintiff had been Medically Cleared by Dr. Jong S. Lee,M.D. on May 3,2018 already that should have superceded Defendant Guldseth,M.D. Decision on April 27,2018 to deny Medical Clearance for the Surgery.

69. Plaintiff was not in agreement,that Defendant Guldseth,M.D. had been the one that initially denied Medically Clearing the Plaintiff for Surgery,and only had involved Defendant Roman B. Cham,M.D. to state after the Health care Grievance that he [Defendant Cham,M.D.]had cancelled the Surgery on April 27,2018.

70. Defendant Guldseth,M.D.,then proceeded to note that he was setting a goal of a Year or Two for Plaintiff to lose 50 lbs. before he would send Plaintiff back to Orthopedic Specialist for further Evaluation as to the Surgery. Thus, delaying the Surgery that would no doubtedly treat his Painful Right Knee Condition and was Recommended on more than one occasion by an Orthopedic Specialist.

71. This unrealistic approach and delay in Care is not only detrimental to Plaintiff's Right Knee Condition,but, also subjecting Plaintiff to unnecessary pain and suffering due to the severe pain the condition causes.

72. Defendant Guldseth,M.D.'s refusal to authorize Plaintiff's required Total Right Knee Replacement and Treatment Referrals on the basis that Plaintiff's Obesity made the Surgery untenable for Plaintiff,can only serve to prove that his delays have left Plaintiff crippled for life and to suffer needlessly from the extreme pain his Right Knee Condition causes.

\* DEFENDANT ROMAN B. CHAM,M.D.

73. In January of 2018, Plaintiff was seen by Defendant Cham,M.D.,Orthopedic Specialist for a Telemedicine Consultation concerning Plaintiff's complaints of Chronic Knee Pain.

74. A review of Plaintiff's MRI was determined to be found positive for a Meniscus Tear and severe Ostearthritis.

75. On April 7,2018, Plaintiff was again seen by Defendant Cham,M.D. for a face to face Evaluation.

76. On April 26,2018, Plaintiff was seen by Defendant Cham,M.D. for a Pre-Op (Work Up/Paperwork)Consultation Visit.

77. During this visit,Defendant Cham,M.D. examined Plaintiff's Right Knee finding that he suffered from Pain and Crepitus with range of Motion of his knee and advanced Tri-Compartment DJD as shown on the X-Rays.

78. Defendant Cham,M.D. discussed Plaintiff's history of MRSA Infection,Diabetes and Obesity Conditions,informing Plaintiff that there was a risk of complications with Arthroplasty,including Infection if Plaintiff decided to move forward with the Knee Replacement Surgery.

79. Defendant Cham,M.D. recommended that Plaintiff stop his Morphine treatment prior to the Surgery and to lose weight so as to recover better from his Surgery.

80. After discussing these risks, Plaintiff chose to move forward with the Surgery nevertheless,and Defendant Cham,M.D. proceeded with Ordering all Pre-Operative Orders including Lab Tests,EKG's ,Medications and Nares Culture tests done to Plaintiff on April 26,2018 while still at Defendant Cham's Office.

81. Defendant Cham,M.D. then wrote in his Physician's Progress Notes,for Surgery Prep,and  noted that Plaintiff was advised the risks of Surgery,to stop his Morphine treatment prior to the Surgery,and requested  Medical Clearance.

82. At no time during the Physician's Progress Notes mentioned above did Defendant Cham,M.D. note that Plaintiff must first lose 50 lbs. and be permantly off of his Morphine Treatment,or have his Diabetes under control before he would recieve the Total Right Knee Replacement Surgery.

83. On May 5,2018, Defendant Cham,M.D. refused to perform the already agreed upon Total Right Knee Replacement Surgery.

84. On May 21,2018, Defendant Cham,M.D.'s Office was contacted by RN Debra Barrett and after discusing Plaintiff's cancelled Surgery and Plaintiff's seeking remedy via an Administrative Appeal,Defendant Cham's Office Manager per RN Barrett's request that Defendant Cham send an Addendum indicating that he was the one rather than Defendant Guldseth,M.D., to have cancelled the Surgery already scheduled by him on April 26,2018.

85. Defendant Cham,M.D. was in cahoots with Defendant Guldseth,M.D. by collaborating to conceal Defendant Guldseth's disregard for Plaintiff's Health Condition[need for a total right knee replacement]which is well documented,could and did result in further worsening of the condition,and subjecting Plaintiff to escruciating pain by his delay in the twice Recommended Total Right Knee Replace-ment Surgery despite his actual knowledge of that need.

86. Defendant Cham,M.D.,provided Defendant Guldseth,M.D. with an Addendum on May 21,2018 indicating that he had canceled Plaintiff's Surgery until he loss 50 lbs.,his Diabetes was well-controlled and he was weaned off his daily Morphine Treatment against his own Recommendation that Plaintiff was in need of a Total Right Knee Replacement to alleviate his Pain symptoms.

87. Defendant Cham,M.D. ignored the fact,that on May 3,2018 Plaintiff was seen by Dr. Jong S. Lee, M.D. where Plaintiff's A1c was noted at 5.7,his GFR 81 chem. Panel were within normal limit,and was cleared for Surgery with a minimal to moderate risk due to or morbid obesity otherwise or left test chest x-ray and

13

EKG were within normal limit.

88. Clearance for Surgery which superceded Defendant Guldseth,M.D.'s April 27,2018 Denial for and Cancellation of Plaintiff's Total Right Knee Replacement Surgery scheduled for May 9,2018 by Dr. Lee,M.D.

&. DEFENDANTS SINGH,M.D.,SHWE,M.D.,AND TOOR,M.D.

89. The following events took place at Valley State Prison between the period of January 2015 thru February 2,2017,at which time he was transfered to the Richard J. Donovan Correctional Facility and where on January 12,2016 he was Recommended his first Total Right Knee Replacement Surgery by Dr. John Casey,M.D.

90. On January 11,2015,Plaintiff submitted a CDC 7362-Health Care Services Request Form(#1856798)complaining of his Right Knee being"swollen real bad" and "it is very hard for me to walk."

91. On January 10,2015,Plaintiff submitted another CDC 7362-Health Care Services Request Form (#1147035) prior to the one he submitted on January 11,2015 and complained of pain symptoms and swelling at the Right Knee.

92. When seen by A. Olubeko,RN on January 13,2015,swelling and redness at the sight was noted.

93. On January 17,2015, Plaintiff again complained by submitting a CDC 7362-Health Care Services Request Form and noted his Right Knee was in unbearable pain and was feeling as if it was going to pop. Com-plained of it getting harder to walk, and requested to see the Orthopedic Specialist.

94. On February 2,2015, Plaintiff submitted a 2nd Request (CDC 7362)(# 1858608) again complaining of pain symptoms and of his Right Knee being really swollen.

95. On February 3,2015,Plaintiff was seen by RN G. Sanchez,and who noted that Plaintiff's pain was at a 9 on the Pain Scale.

96. On February 18,2015,Plaintiff submitted another CDC 7362 (# 1787715) complaining that his Right Knee was swollen and he was in severe pain.

14

97. On February 25,2015, Plaintiff finally saw Defendant Singh,M.D.,where all he did was Order an X-Ray,and was Recommended a Kenalog Injection.

98. On March 12,2015, Plaintiff signed aCDC 7342- Informed Consent to Surgical,Special Diagnostic,or Therapeutic Procedures Form,and was informed that no Referral would be submitted for Plaintiff to see an Orthopedic Specialist at that time.

99. Plaintiff continued to complain to Medical Staff and not until July 9, 2015, approximately (119) days after signing the Consent for the Kenalog Injection was Plaintiff actually given the Injection by Defendant Singh,M.D.

100. It was not until July 9,2015, approximately (134) days after the Feb. 25,2015 Consultation,that Defendant Singh,M.D. actually and finally referred the Plaintiff to see an Orthopedic Specialist for his severely painful Right Knee Condition.

101. Plaintiff was scheduled for an Orthopedic Specialist Consultation set for September 22,2015.

102. Although this Consultation was Recommended for less than 30 Days as a Routine requested Treatment/Service,Plaintiff was not scheduled to be seen until approximately (75) days after the Recommended (30) days) on July 10,2015 approval of the Referral.

103. On July 29,2015, Plaintiff was seen by Defendant Tin-Aung Shwe,M.D., and as noted by him on his CDCR 7230-M Primary Care Provider Progress Note,he notes that the visit was for informing the Plaintiff that the Follow Up Referral for a Total Knee Replacement to his Right Knee was denied by the MAR Committee on July 22,2016.

104. An impossibility,since the MAR Committee's denial took place on July 22,2016,approximately (358)Days after the July 29,2015 Consultation with Defendant Shwe,M.D. and that could only lead to one conclusion. That Defendant Shwe,M.D.

15

modified the July 29,2015 CDCR 7230-M Primary Care Provider Progress Note Form to justify why Plaintiff was not being afforded Recommended Treatment for his painful Right Knee Condition.

105. Defendant Shwe,M.D.'s action raises the question and disputes the fact whether Plaintiff was subjected to a pattern of deliberate denial of care.

106. After Plaintiff had continued to complain by submitting CDC 7362's (#1786980 on June 15,2015 & #2224119 on July 23,2015)that his Right Knee felt as it was about to burst and had gained fluid inside of it.

107. In addition to, complaining that Defendant Singh,M.D. had only gave him an Injection Two Months prior,but never relieved his pain symtoms,and requesting additional services.

108. It was not until September 25,2015,when seen by K. Phanh,PA,that an MRI was referred and approved on September 29,2015.

109. Defendant Singh,M.D. was made aware of Plaintiff's continued complaints and on October 13,2015 gave Plaintiff another Kenalog Injection for temporary Relief.

110. It was not until November 10,2015,when Plaintiff was afforded an MRI, whic determined that Plaintiff suffered from:(1) Large complex tear of the medial meniscus;(2) No cruciate or collateral ligament tears;(3)Arthritic changes of the knee most severely affect the medial compartment;(4)Region of avascular necrosis affects the medial femoral condyle;and (5)Joint Effusion.

111. These findings were delivered to Defendant Singh,M.D. on November 13, 2015.

112. Plaintiff was seen by Defendant K. Toor,M.D. on December 1,2015 for a follow up visit in regards to these MRI Findings.

113. On January 26,2016,Plaintiff was again seen by Defendant Shwe,M.D. and a Referral was submitted for a Total Knee Replacement per the Recommendation of Dr. John Casey,M.D. (Orthopedic Specialist at the San Joaquin General Hospital

on January 12,2016, noting that "the only treatment that is going to alleviate his discomfort is going to be a right total knee replacement."

114. On February 22,2016,Plaintiff was again seen by Defendant Shwe,M.D., and was informed that on February 2,2016,the Referral for the Total Knee Replacement Surgery was Denied.

115. Defendant Shwe,M.D. informed Plaintiff that he was Denied due to being obese.

116. On March 9,2016, Plaintiff submitted another CDC 7362-Health Care Services Request Form (# 4191530)continuing to complain that he was extreme Pain and could not walk without difficulty.

117. On June 28,2016,Plaintiff was again seen by Defendant Shwe,M.D.,and another Referral (RFS) was submitted for clearance of a Total Knee Replacement Surgery of the Right Knee. This Referral was denied on June 29,2016;again.

118. On July 22,2016,Defendant K. Toor,M.D.,and acting Chief Physician & Surgeon at VSP-Chowchilla,as a member of the MAR Committee upon review of the Request made by Dr. Shwe,M.D. disapproved the Surgery.

119. Despite of knowing that Plaintiff was and is currently suffering from Avascular Necrosis Femoral Condyle,Large Complex Tear of the Medial Meniscus,and severe arthritis Medial Compartment requiring a Total Knee Replacement in order to alleviate the pain and loss of ability to walk as Recommended by Dr. John Casey,M.D. (Orthopedic Specialist) on January 12,2016 some approximate (191) Days prior to this MAR Committee Review.

120. Despite of numerous Referrals being submitted and Record generated all signifying that a Total Knee Replacement is warranted.

121. Defendant Toor,M.D. simply ignored these findings and Recommendations and instead chose to deny affording Plaintiff sound treatment.

122. On September 19,2016,Plaintiff was seen by Defendant Shwe,M.D. once

again and in his CDCR 7230-M Primary Care Provider Progress Note,made note of the Plaintiff's Right Knee Condition causing extreme pain that hindered his ability to walk. Noted Redness and warmth,tenderness and limited movement after his examination.

123. Defendant Shwe,M.D. central focus was on Plaintiff being obese.

124. Defendants'Singh,Shwe,and Toor futile precursor of nonoperative options to treat Plaintiff's Right Knee Condition,including his weight as a precondition and precursor to a total knee replacement surgery was unreasonable giving the circumstances and demonstrate a pattern of inadequate care being given to the Plaintiff in order to avoid the costs of the surgery.

125. In retrospect, on June 2,2016, Plaintiff filed an Administrative Appeal(Log # VSP-HC-16006495) complaining that he was being denied a Medically indicated and Recommended Procedure that was in his Medical Opinion [Dr. John Casey,M.D.]was,"the only treatment that is going to alleviate his discomfort is going to be a right total knee replacement."

126. Dr. John Casey,M.D.;s Consultation Report dated January 12,2016,noted at subjective factors,that Plaintiff had stated that he had failed conservative management which consisted of nonsteroidal anti-inflamatory medications,pain medication,attempted weight reduction,use of a walker. But,nowhere on the treat-ment Plan did he state that Plaintiff was required to lose 50lbs. & be weaned off of his Opiod Treatment prior to him being able to perform the Surgerey.

127. On June 28,2016, Plaintiff was interviewed by Defendant Shwe,M.D.,and at the First Level Response, Defendant Toor,M.D. noted that Plaintiff's issue was Partially Granted,noting further evaluation of Plaintiff's condition was Recomm-ended before knee surgery can be Recommended. That Defendant Shwe,had requested knee surgery,however more information was needed before approval can be made.

128.Defendant Toor,M.D. ignored Dr.John Casey,M.D.'s Recommendation

18

that was reached upon his own physical examination,he concluded that Plaintiff had "a varus bow to the right lower extremity.He has positive petellofemoral compression test. He has severe pain palpated to the patellofemoral joint as well as to the medial compartment.He has significant discomfort with range of motion.He has a range of motion from -5 degrees of full extension to significant pain with about 60-70 degrees of flexion."

129. That the"MRI Scan aswell as X-Rays were reviewed and they showed significant degenerative joint disease with significant full-thickness cartilage loss involving the medial compartment aswell as medial joint line."**(Consultation,at p. 1 of 1)**

130. The Record shows,that nevertheless,the Referral allegedly submitted by Defendant Shwe,M.D. on June 28,2016,was denied by Defendant Toor,M.D.,then again formally as part of the MAR Committee on July 22,2016 disapproved the Surgery for the Total Right Knee Replacement despite of the above stated facts **¶¶ 126-129.**

131. At the Second Level of Review,Plaintiff was again denied and this time was informed that the MAR Committee had denied the Request for Surgery due to his Obesity,ignoring the fact Plaintiff was and to this date is in severe Pain due to the Condition.

132. On December 20,2016,the Appeal was Denied at the Director's Level of Review and all Administrative Remedies were fully exhausted.

133. Since, Plaintiff has endured unreasonable delays in further treatment, significant pain and suffering caused by this worsening condition,and has been denied the required Surgical Procedure at his current place of Incarceration based on the same reasoning relying on their own reasoning rather than the Specialist Recommendation to have the surgery performed to alleviate Plaintiff's pain.

134. Plaintiff has been affected his daily activities;suffered the existence of chronic and substantial pain due to these Defendants against all reasonable Care.

19

## CLAIM FOR RELIEF

### I.

### EIGHTH AMENDMENT VIOLATION-DELIBERATE INDIFFERENCE TO PLAINTIFF'S SERIOUS MEDICAL NEEDS

135. Plaintiff realleges and incorporates by reference each allegation of paragraphs 30 thru 58 and 63 thru 124,127 thru 132,inclusive,as alleged herein.

136. Plaintiff asserts,that Defendants individually and in concert violated his Right guaranteed by the Eighth Amendment of the United States Constitution. Defendants conduct constitutes deliberate indifference to Plaintiff's Serious Medical Needs in violation of his Right to be free from cruel and unusual punishment.**Estelle v. Gamble**,429 U.S. 97,104(1976);**Farmer v. Brennan**,511 U.S. 825 (1994);see **Jett v. Penner**,439 F.3d 1091,1096(9th Cir. 2006);see also **Snow v. McDaniel**,681 F.3d 978,986(9th Cir.2012);**Hamilton v. Endell**,981 F.2d 1062,1067(9th Cir.1992);**Colwell v. Bannister**,763 F.3d 1060(2014);**McGuckin**,974 F.2d at 1059-60, 974 F.2d 1050(9th Cir.1992);**Hunt v. Dental Dept.**,865 F.2d 198,200(9th Cir.1989).

137. Plaintiff is informed and believes,and therein alleges that Defendants acted intentionally in manner described above with knowledge of Plaintiff's suffering and risk of further serious harm that could result from these actions and delay.

138. As a direct and proximate result of all Defendants' actions herein alleged,plaintiff suffered and continues to suffer injury and inability to walk without being in extreme pain,continues to be denied a Constitutional Right.

139. Plaintiff is entitled to an Award of Compensatory and Punative Damages for injury and pain and suffering caused by Defendants' failure to provide adequate care.

140. As a further direct and proximate result of all Defendants' actions herein alleged,Plaintiff suffered and continues to suffer severe emotional and psychological distress. Plaintiff is entitled to an Award of Compensatory and Punative Damages for injuries incurred.

141. Plaintiff is entitled to Injunctive Relief in form of proper and undelayed care to his Right Knee in form of a Total Right Knee Replacement.

142. Plaintiff is entitled to a Trial by Jury to determine the extent of the Defendants' liability and Damages.

**WHEREFORE,** Alberto Sandoval [Plaintiff] respectfully prays that this Court grant the following relief:

1. Injunctive Relief in form of proper and undeyed treatment,a Total Right Knee Replacement;

2. Compensatory Damages according to proof;

3. Punative Damages according to proof;

4. Such further relief as the court deems proper'

### DEMAND FOR TRIAL BY JURY

Plaintiff Alberto Sandoval, hereby demands a Trial by Jury to determine the extent of Defendants' liability and Damages.

Dated: _8/20/19_

Respectfully Submitted:

**ALBERTO SANDOVAL**
CDCR # AM0186
Plaintiff/In Pro Per

21

**C. Causes of Action** (You may attach additional pages alleging other causes of action and the facts supporting them if necessary.)

Count 1: The following civil right has been violated:_____

(E.g., right to medical care, access to courts,

Eighth Amendment Right to Adequate Medical Care. _____.

due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.)

Supporting Facts: [Include all facts you consider important to Count 1. State what happened clearly and in your own words. You need not cite legal authority or argument. Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Count 1.]

Please see attached Statement of Facts. _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Count 2:  The following civil right has been violated: _____

_____ (E.g., right to medical care, access to courts,

due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.)

Supporting Facts:   [Include all facts you consider important to Count 2. State what happened clearly and in your own words. You need not cite legal authority or argument.  Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Count 2.]

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Count 3:  The following civil right has been violated: _____

(E.g., right to medical care, access to courts,

due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.)

Supporting Facts:   [Include all facts you consider important to Count 3. State what happened clearly and in your own words. You need not cite legal authority or argument.  Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Count 3.]

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

§ 1983 SD Form
(Rev. 8/15)

**D. Previous Lawsuits and Administrative Relief**

1. Have you filed other lawsuits in state or federal courts dealing with the same or similar facts involved in this case?  ☐ Yes  ☒ No.

If your answer is "Yes", describe each suit in the space below.  [If more than one, attach additional pages providing the same information as below.]

(a)  Parties to the previous lawsuit:
Plaintiffs: _____

Defendants: _____

(b)  Name of the court and docket number: _____

_____.

(c)  Disposition: [ For example, was the case dismissed, appealed, or still pending?] _____

_____.

(d)  Issues raised: _____

_____

_____

_____.

(e)  Approximate date case was filed: _____

(f)  Approximate date of disposition: _____

2. Have you previously sought and exhausted all forms of available relief from the proper administrative officials regarding the acts alleged in Part C above? [E.g., CDCR Inmate/Parolee Appeal Form 602, etc.] ?  ☒ Yes  ☐ No.

If your answer is "Yes", briefly describe how relief was sought and the results.  If your answer is "No", briefly explain why administrative relief was not exhausted.

On April 28,2018, I submitted a Health Care Grievance-CDCR 602 HC [Log #

RJD HC 18001595],and on October 12,2018 the Grievance was denied at the

Headquarters' Level of Review. The Appeal has been fully Exhausted all

Administrative Remedies.

_____

_____

_____

_____.

**E. Request for Relief**

Plaintiff requests that this Court grant the following relief:

    1. An injunction preventing defendant(s):

From providing delayed treatment and inadequate medical

care for Plaintiff's serious medical needs;

_____

_____ .

_____

    2. Damages in the sum of $ According to Proof ;

    3. Punitive damages in the sum of $ According to Proof ;

    4. Other:  Any such further Relief as the Court deems proper, in-

cluding Appointment of Counsel pursuant to 28 U.S.C. § 1915(e)(1).

**F. Demand for Jury Trial**

    Plaintiff demands a trial by ☒ Jury ☐ Court. (Choose one.)

**G. Consent to Magistrate Judge Jurisdiction**

    In order to insure the just, speedy and inexpensive determination of Section 1983 Prisoner cases filed in this district, the Court has adopted a case assignment involving direct assignment of these cases to magistrate judges to conduct all proceedings including jury or bench trial and the entry of final judgment on consent of all the parties under 28 U.S.C. § 636(c), thus waiving the right to proceed before a district judge. The parties are free to withhold consent without adverse substantive consequences.

    The Court encourages parties to utilize this efficient and expeditious program for case resolution due to the trial judge quality of the magistrate judges and to maximize access to the court system in a district where the criminal case loads severely limits the availability of the district judges for trial of civil cases. Consent to a magistrate judge will likely result in an earlier trial date. If you request that a district judge be designated to decide dispositive motions and try your case, a magistrate judge will nevertheless hear and decide all non-dispositive motions and will hear and issue a recommendation to the district judge as to all dispositive motions.

    You may consent to have a magistrate judge conduct any and all further proceedings in this case, including trial, and the entry of final judgment by indicating your consent below.

Choose only one of the following:

☐ Plaintiff consents to magistrate judge jurisdiction as set forth above.

**OR**

☒ Plaintiff requests that a district judge be designated to decide dispositive matters and trial in this case.

8/20/19
Date

_____
Signature of Plaintiff