**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALBERTO SANDOVAL,<br>CDCR # AM-0186,<br><br>  Plaintiff,<br><br>v.<br><br>DAVID GULDSETH, M.D.<br>ROMAN B. CHAM, M.D.,<br><br>  Defendants. | Case No.: 19-cv-1584-BAS-RBB<br><br>**ORDER DIRECTING U.S. MARSHAL TO EFFECT SERVICE OF FIRST AMENDED COMPLAINT UPON DEFENDANTS PURSUANT TO 28 U.S.C. § 1915(d) AND Fed. R. Civ. P. 4(c)(3)** |

Before the Court is Plaintiff's First Amended Complaint ("FAC"). (ECF No. 8.) Having conducted the *sua sponte* screening required by 28 U.S.C. § 1915(e)(2) and § 1915A, the Court finds that the FAC sufficiently states claims for relief under 42 U.S.C. § 1983 and directs service of the FAC on Defendants.

**I.    PROCEDURAL HISTORY**

On August 23, 2019, Alberto Sandoval ("Plaintiff"), incarcerated at the Richard J. Donovan Correctional Facility ("RJD") in San Diego, California filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983. (*See* ECF No. 1, Compl.) In addition, Plaintiff filed a Motion to Proceed *In Forma Pauperis* ("IFP"). (*See* ECF No. 2.)

On October 7, 2019, the Court granted Plaintiff's Motion to Proceed IFP but simultaneously dismissed his Complaint for failing to state a claim against correctional officials at RJD pursuant to 28 U.S.C. § 1915(E)(2) and § 1915A(b). (*See* ECF No. 5 at 10.) The Court also severed all claims against correctional officials at Valley State Prison ("VSP") pursuant to Federal Rule of Civil Procedure 21 and directed the Clerk of Court to terminate these Defendants from the Court's docket. (*See id.*)

Plaintiff was given forty-five (45) days leave to file an amended complaint in order to correct the deficiencies of pleading identified in the Court's Order. (*See id.*) Plaintiff later requested, and received, an extension of time to file his amended complaint. (*See* ECF Nos. 6, 7.) On January 31, 2020, Plaintiff filed the FAC. (*See* ECF No. 8.)

## II. SUA SPONTE SCREENING

For the reasons stated below, the Court finds that the FAC contains sufficient factual matter to state a claim for relief plausible on its face, thus satisfying the screening standard.

### A. Standard of Review

As the Court previously stated, because Plaintiff is a prisoner and is proceeding IFP, his FAC requires a pre-Answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under [Section] 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*,

668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to Section 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121. While the court "ha[s] an obligation where the petitioner is *pro se*, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

**B. Factual Allegations**

Plaintiff alleges that he suffers from a "large complex tear of the medial meniscus." (FAC at 3.) As a result of this condition, Plaintiff "suffers from extreme" and "persistent pain and swelling" in his right knee. (*Id.*) This condition "hampers his ability to walk" and "substantially limits [Plaintiff's] major life's activities, including but not limited to, walking, standing, lifting, bending and working." (*Id.*)

On January 12, 2016, Dr. John Casey, M.D.[1] "recommended a total knee replacement" for Plaintiff. (FAC at 3.) Dr. Casey noted that "the only treatment that is going to alleviate [Plaintiff's] discomfort is going to be a right total knee replacement." (*Id.*)

Plaintiff was examined by Dr. David Guldseth, M.D., his "Personal Care Provider," on February 8, 2017. (FAC at 5.) Plaintiff alleges Guldseth disregarded Casey's recommendation and instead determined Plaintiff's condition could be "treated with pain

---
[1] Dr. Casey is not a named Defendant.

2

19cv1584

medications rather than recommended surgery." (*Id.*) Plaintiff submitted a "request to be referred back to an orthopedic surgeon to treat his right knee condition and his need for a right total knee replacement surgery" on February 28, 2017. (*Id.*)

On March 23, 2017, Plaintiff was again seen by Guldseth who noted Plaintiff's "inability to walk a distance of a block without being in pain," along with his inability to "sleep at night." (FAC at 5.) Plaintiff alleges Guldseth was "aware of the recommendation for a total knee replacement as the only treatment for the Plaintiff's right knee condition." (*Id.*) Plaintiff claims Guldseth "refused to refer Plaintiff to an orthopedic surgeon." (*Id.*) On April 26, 2017, Guldseth "continued to ignore Plaintiff's complaints and further delayed his treatment downgrading the severity of the condition." (*Id.*)

After submitting "numerous CDC 7362 Health Care Services" request forms, Guldseth "finally referred [Plaintiff] to an off site specialist." (FAC at 7.) Plaintiff was examined by Dr. Roman Cham in January of 2018, approximately one year after Guldseth "first became aware of Plaintiff's painful knee condition." (*Id.*) On April 26, 2018, Cham, after discussing Plaintiff's medical history, "proceeded to recommend the total knee replacement surgery" and "ordered all pre-op orders." (*Id.* at 10.) Cham "requested Plaintiff be cleared for surgery" and "made arrangements for Plaintiff's surgery to take place on May 9, 2018." (*Id.*) Plaintiff claims Cham did not note in his report and request for medical clearance that "Plaintiff should lose 50 lbs.," be "permanently weaned off his morphine treatment," or that Plaintiff's "diabetes be in control" before Cham would perform the surgery.

However, Plaintiff claims Guldseth "cancelled the scheduled surgery set for May 9, 2018." (FAC at 7–8.) Plaintiff filed an administrative appeal "complaining of [Guldseth's] denial of medical clearance and failure to follow the specialist's recommendation for surgery." (*Id.* at 8.) Plaintiff alleges that it was "not until after the filing of his health care

2

grievance" on May 21, 2018 that "RN Debra Barrett[2] contacted [Cham's] office manager" and requested that Cham issue an "addendum" to his previous report indicating that Cham had "cancelled the scheduled May 9, 2018 surgery rather than [Guldseth]." (*Id.* at 8.) Cham complied with this request and "provided [Guldseth] with an addendum stating that [Cham] had cancelled the scheduled surgery" citing the need for Plaintiff to lose weight and be weaned off morphine. (*Id.* at 11.) Plaintiff claims Cham "knowingly and intentionally refused to treat Plaintiff's painful condition, when he decided to be in cahoots with [Guldseth] rather than follow his own recommendation made on April 26, 2018 to perform a total knee replacement on Plaintiff's right knee." (*Id.*)

### C. Analysis

As currently pleaded, the Court finds that Plaintiff's FAC contains "sufficient factual matter, accepted as true" to state an Eighth Amendment claim against Defendants Guldseth and Cham that are "plausible on its face," and, therefore, is sufficient to survive the "low threshold" set for sua sponte screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). *See Iqbal*, 556 U.S. at 678; *Wilhelm*, 680 F.3d at 1123; *see also Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (prison officials' deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment.)

Accordingly, the Court will direct the U.S. Marshal to effect service upon Defendants Guldseth and Cham on Plaintiff's behalf. *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) ("[T]he court may order that service be made by a United States marshal or deputy marshal . . . if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915.").

---

[2] Barrett is not a named Defendant.

## III. CONCLUSION AND ORDER

For the reasons discussed, the Court:

1) **DIRECTS** the Clerk to issue a summons as to Plaintiff's FAC (ECF No. 8) upon Defendants Guldseth and Cham and forward it to Plaintiff along with blank U.S. Marshal Form 285 for Defendants. In addition, the Clerk will provide Plaintiff with a certified copy of the IFP Order (ECF No. 5), a certified copy of his FAC, and the summons so that he may serve Defendants. Upon receipt of this "IFP Package," Plaintiff must complete the Form 285s as completely and accurately as possible, **include an address where the Defendants may be served**, *see* CivLR 4.1.c, and return it to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package;

2) **ORDERS** the U.S. Marshal to serve a copy of the FAC and summons upon Defendants as directed by Plaintiff on the USM Form 285s provided to him. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3);

3) **ORDERS** Defendants, once served, to reply to Plaintiff's FAC within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a). *See* 42 U.S.C. § 1997e(g)(2) (while a defendant may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. Sections 1915(e)(2) and 1915A(b), and thus, has made a preliminary determination based on the face on the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," defendant is required to respond); and

4) **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon Defendants, or, if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must include with every

original document he seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document has been was served on the Defendants or their counsel, and the date of that service. *See* CivLR 5.2. Any document received by the Court which has not been properly filed with the Clerk, or which fails to include a Certificate of Service upon the Defendants, may be disregarded.

**DATED: March 31, 2020**

Hon. Cynthia Bashant
United States District Judge