1
2
3
4
5
6
7

8  **UNITED STATES DISTRICT COURT**

9  **SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  ALBERTO SANDOVAL, CDCR #AM-0186, | Case No.: 3:19-cv-1584-JO-RBB |
| 12  Plaintiff, | **ORDER: (1) GRANTING DEFENDANT GULDSETH'S MOTION FOR SUMMARY JUDGMENT [ECF No. 46] PURSUANT TO FED. R. CIV. P. 56 AND** |
| 13  vs. | |
| 14 | |
| 15 | |
| 16  DAVID GULDSETH, M.D, | **(2) DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION [ECF No. 55]** |
| 17  Defendant. | |
| 18 | |

19

20    On August 23, 2019, Plaintiff Alberto Sandoval ("Plaintiff" or "Sandoval"),

21 currently proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to

22 42 U.S.C. § 1983. *See* Compl., ECF No. 1. In his complaint, Sandoval claims that Dr.

23 David Guldseth violated his constitutional right to adequate medical care while he was

24 housed at R.J. Donovan Correctional Facility ("RJD").[1] *See id.*

25

26

27  [1] On February 11, 2022, Sandoval filed a motion which indicated he had changed addresses. *See* ECF No. 49. According to the California Department of Corrections and Rehabilitation ("CDCR") Inmate Locator,

28 there is no longer an "Alberto Sandoval" with inmate number AM-0186 in CDCR custody. https://inmatelocator.cdcr.ca.gov/Results.aspx (visited June 6, 2022).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.

# BACKGROUND

## A.    Plaintiff's Allegations Against Dr. Guldseth[2]

In his First Amended Complaint, Sandoval alleges he suffers from a "significant joint degenerative disease" and a loss of cartilage in his right knee. Am. Compl., ECF No. 8, (hereafter "FAC") ¶ 1. As a result, Sandoval suffers from "persistent pain and swelling" in his right knee that hinders his ability to stand or walk. *Id.* at ¶¶ 3–5.

Plaintiff alleges that in January 2016, Dr. Casey, an orthopedic surgeon, recommended total right knee replacement surgery to treat his condition. *Id.* at ¶ 6. After Sandoval transferred to RJD, however, Dr. Guldseth became his primary care physician. *Id.* at ¶ 16. Ignoring Dr. Casey's surgery recommendation, Dr. Guldseth treated Sandoval's knee with pain medication. *Id.* at ¶ 19. Sandoval complained that the pain medications were ineffective and asked to be referred to an orthopedic specialist. *Id.* at ¶¶ 25, 27. Dr. Guldseth ultimately referred Sandoval to an outside specialist, Dr. Cham, who recommended total right knee replacement. *Id.* at ¶ 30. Dr. Cham counseled Plaintiff that in order to be a good surgical candidate, he would need to stop his Morphine treatment and lose weight before the surgery. *Id.* at ¶¶ 55, 59. The surgery was scheduled for May 9, 2018. *Id.* at ¶ 61. When Sandoval saw Dr. Guldseth two weeks before the scheduled surgery, Dr. Guldseth told Sandoval he would not be cleared for surgery until he lost 50 pounds and was weaned off Morphine. *Id.* at ¶ 36. The surgery was canceled and Dr. Guldseth refused to refer Sandoval back to a specialist for reassessment until he lost the weight. *Id.* at ¶¶ 47, 51.

## B.    Undisputed Facts Regarding Plaintiff's Medical Care[3]

Sandoval began seeing Dr. Guldseth as his primary care physician on February 8,

---

[2] On May 13, 2022, the Court dismissed Sandoval's claims against Dr. Roman Cham for failure to effect service pursuant to Federal Rule of Civil Procedure 4(m). *See* ECF No. 58.

[3] Plaintiff's FAC is not verified and he did not file an opposition to Defendant's motion for summary judgment. *See* ECF No. 1.

2017, after Sandoval was transferred to RJD. *See* Def.'s Decl., ECF No. 46-2 (hereafter "Def.'s Decl.") ¶ 2; Def.'s Ex. A at 1; FAC ¶ 16. During this first appointment, Dr. Guldseth reviewed Sandoval's history, medications and current complaints and noted that Sandoval suffered from several other health issues in addition to the severe joint degeneration of his right knee, including hypertension, glaucoma, sleep apnea, right shoulder derangement, peptic ulcer disease, prediabetes, benign prostatic hypertrophy, gout and morbid obesity. Def.'s Decl. ¶ 2; Def.'s Ex. A. at 1. Dr. Guldseth's notes indicate that Sandoval told Dr. Guldseth that "he was denied right knee surgery recently." Def.'s Ex. A at 1. Based on the above, Dr. Guldseth embarked on a treatment plan of managing Sandoval's knee pain with medication and physical therapy. *See* Def.'s Ex. A at 2; Def.'s Decl. ¶ 2. He also recommended Sandoval try to lose weight. Def.'s Decl. ¶ 2. At that time, Sandoval, who is five feet, eight inches tall, weighed 279 pounds. Def.'s Ex. A at 2.

During their next appointment, Plaintiff raised the question of knee surgery but Dr. Guldseth kept him on his pain medication treatment plan. Def.'s Ex. B at 4. Medical records indicate Sandoval asked Dr. Guldseth "when he [could] have knee surgery" at his next appointment on February 23, 2018. *Id.*; Def.'s Decl. ¶ 3. Sandoval said he had been told previously that he "would have to lose weight before he could have his surgery" and asked "how much weight he would need to lose." Def.'s Ex. B at 4. Dr. Guldseth told Sandoval that ideally his Body Mass Index ("BMI") should be "normal or near normal" for the best surgical outcome. *Id*; *see also* Def.'s Decl. ¶ 3. At the time, Plaintiff weighed 268 pounds and his BMI was 40.7. Def.'s Ex. B at 4. (A BMI over 30 indicates obesity. Def.'s Decl. ¶ 3.) Dr. Guldseth kept Sandoval on a pain management regimen but adjusted it by adding Gabapentin[4] as a pain reliever and taking Plaintiff off Elavil because Plaintiff complained of its side effects. *Id.* at ¶ 4; *see also* Def.'s Ex. B at 4.

---

[4] Gabapentin is commonly prescribed for seizure conditions but can also be used to treat pain. *See* Def.'s Decl. ¶ 4.

1    When Sandoval saw Dr. Guldseth again on March 23, 2017 for his knee pain, the

2    doctor discussed surgery as an option and advised Sandoval that he would need to lose

3    weight to be a good surgical candidate.[5] Def.'s Ex. D at 8. Dr. Guldseth reviewed Plaintiff's

4    treatment history with Dr. Casey, an orthopedic specialist, and noted that Dr. Casey had

5    recommended surgery for total right knee replacement. *Id.* at 8–9; *see also* Def.'s Decl. ¶

6    7–8. Dr. Guldseth explained to Plaintiff that, while Dr. Casey had previously recommended

7    surgery, Sandoval was ultimately denied the surgery because of his weight.[6] Def.'s Ex. D

8    at 8; Def.'s Decl. ¶¶ 6, 9. Given that Sandoval weighed 123.8 kilograms and had a BMI of

9    41.4 at that time, Dr. Guldseth informed Sandoval would have to lose some weight before

10   any surgery, to ensure a positive outcome. Def.'s Ex. D at 8. Dr. Guldseth advised him to

11   "exercise, drink plenty of fluids and decrease carbohydrate intake by 50%." *Id.* at 9; *see*

12   *also* Def.'s Decl. ¶ 9. Dr. Guldseth noted he would "refer Sandoval to Physical Therapy

13   and Pain Management Group." Def.'s Ex. D at 9. He also continued Sandoval's

14   prescriptions for Tylenol No. 3 with Codeine and Gabapentin. *Id.*

15   Sandoval saw Dr. Guldseth and other health care professionals at least four more

16   times between April and September 2017 for his knee pain. *See* Def.'s Exs. E–H. On April

17   26, 2017, Dr. Guldseth ordered a "[r]epeat x-ray of the right knee" and noted that a request

18   for Sandoval to receive physical therapy was "pending." Def.'s Ex. E at 11. Plaintiff

19   ultimately refused the knee x-rays, which had been scheduled for May 4, 2017.[7] Def.'s Ex.

20   F at 12. On May 31, 2017, Sandoval had another appointment during which he complained

21   of uncontrolled knee pain. Def.'s Ex. G at 13. Dr. Guldseth noted that the Tylenol No. 3

---

[5] Plaintiff also saw Dr. Guldseth for stomach pain on March 16, 2017. Notes from that appointment do not reflect any discussion of Sandoval's knee pain. Def.'s. Ex. C. At the time, Sandoval weighed 122.9 kilograms (approximately 271 pounds) and had a BMI of 41.1. *Id.* at 6.

[6] It is unclear from the record who specifically made the ultimate decision to deny Sandoval knee replacement surgery in 2016. *See e.g.,* Def.'s Ex. D at 8; *see also* Def.'s Ex. B at 4.

[7] According to Dr. Guldseth's notes, the x-rays were "originally ordered for December 17." Ex. F at 12.

with Codeine did not appear to be managing Sandoval's pain, so he discontinued the Tylenol No. 3 and put Sandoval back on Morphine, twice a day. *Id.; see also* Def.'s Decl. ¶¶ 12–13. On August 24, 2017, Sandoval had a follow-up appointment, this time with Dr. Luzbiminda Saidro, regarding his knee pain and desire to have surgery. Def.'s Ex. H at 15. Dr. Saidro noted that Sandoval had been "seen by Orthopedics in January 2017" and a referral to Orthopedics for knee surgery was recommended "if his body mass index is less than 40." *Id.* Sandoval's weight at the time was 129 kilograms and his BMI was 43.1. *Id.* Dr. Saidro continued Sandoval's pain medications and advised him to eat healthy and exercise to lose weight. *Id.* On September 13, 2017, Sandoval saw a nurse about knee pain. *See* Def.'s Ex. I at 17.

Despite Plaintiff's failure to lose weight, Dr. Guldseth referred to him to an orthopedic specialist on September 22, 2017. *Id.*; *see also* Def.'s Decl. ¶ 16. Dr. Guldseth submitted a Request for Services ("RFS") for an orthopedic specialist to reevaluate Sandoval's right knee. Def.'s Ex. I at 17; Def.'s Ex. J at 19. While Sandoval waited for his orthopedic appointment, he saw Dr. Guldseth at least three more times, during which Dr. Guldseth ordered physical therapy, continued Sandoval's Morphine, increased his Gabapentin dose, added Tylenol for additional pain control, and ordered a wedge pillow so Sandoval could elevate his knee at night. Def.'s Exs. K–M; *see also* Def.'s Decl. ¶ 18–20. On January 23, 2018, Sandoval had a tele-med appointment with orthopedic specialist, Dr. Cham, during which they discussed possible surgery. Def.'s Ex. N.

Dr. Cham told Sandoval that "the only treatment likely to provide him with any significant pain relief would be a knee replacement." *Id.* at 28. Dr. Cham also noted, however, that due to his other health issues, Sandoval would need to "have a medical evaluation and then clearance before a major procedure such as arthroplasty." *Id*. At his February 1, 2018 appointment with Dr. Guldseth, Sandoval indicated he wanted to go forward with the surgery. Def.'s Ex. O at 29; Def.'s Decl. ¶ 22. On February 7, 2018, Dr.

Guldseth submitted an RFS[8] seeking authorization for total right knee replacement surgery based on Dr. Cham's recommendation.[9] Def.'s Ex. P at 32; Ex. O at 29; Def.'s Decl. ¶ 23.

While it is unclear when exactly surgery was put on the schedule, it is undisputed it was initially set for May 9, 2018. FAC ¶ 61; Def.'s Ex. R at 34; Def.'s Decl. ¶ 27. On April 26, 2018, Sandoval saw Dr. Cham for a face-to-face pre-operative visit.[10] Def.'s Ex. Q at 33. Dr. Cham cautioned that due to Sandoval's diabetes, obesity and previous history of serious infection, he was at "significant risk for complications" with total knee replacement. *Id.* Dr. Cham instructed Sandoval to stop taking Morphine to help control post-operative pain. *Id.* He also noted Sandoval "needs to lose weight." *Id.* Ultimately, Dr. Cham noted he would "request authorization and bring [Sandoval] back once we have authorization and medical clearance." *Id.*

The next day, April 27, 2018, an RJD nurse received word from Dr. Cham that he was canceling Sandoval's surgery. Dr. Cham indicated Sandoval was "high risk" and he wanted "[Sandoval] off morphine and [to] lose weight before rescheduling." Def.'s Ex. R at 34. Dr. Cham further stated that because "it's elective surgery he wants to give [Sandoval] time to be more healthy before going through the surgery." *Id.*; *see also* Def.'s Decl. ¶ 25. Dr. Guldseth relayed the information to Sandoval at an appointment later that day. Def.'s Ex. S at 35; Def.'s Decl. ¶ 26. On May 21, 2018, Dr. Cham sent an addendum to his April 26, 2018 report, stating that he canceled Sandoval's surgery "until pre-op clearance goals are met: weight reduction (50lb) and weaned off daily Morphine." Def.'s Ex. T at 39.

//

---

[8] The request was "routine" which typically suggests the service should occur within the next 90 days. Def.'s Decl. ¶¶ 17, 22–23; *see also* Def.'s Ex. P at 32.

[9] It is unclear if or when the surgery was authorized by CDCR officials. *See* Def.'s Ex. P at 32.

[10] Medical records indicate Sandoval also saw Dr. Cham on April 7, 2018 for a face-to-face evaluation but no report from that date is included in the record. *See* Ex. R at 34.

After the surgery was canceled, Dr. Guldseth resumed treating Sandoval's knee pain non-surgically, while encouraging Sandoval to the 50 pounds required by Dr. Cham. *See* Def.'s Exs. U–Z. But Sandoval had difficulty losing weight. On the day he learned Dr. Cham had canceled the surgery, Sandoval weighed 138.6 kilograms. Def.'s Ex. S. at 35. During the six months that followed, his weight fluctuated,[11] but never dropped below 135.5 kilograms—a loss of only 6.8 pounds. Def.'s Ex. Z at 56. During the same period, Dr. Guldseth continued to treat Sandoval's pain with medications, including Morphine, Gabapentin, Tylenol, and physical therapy. *See* Def.'s Ex. U at 40–41, Ex. V at 44, ex. W at 47. At Sandoval's October 8, 2018 appointment, the last visit with Dr. Guldseth for which this Court has records, Dr. Guldseth encouraged him to continue his weight loss, recommending he walk with a cane when possible. Def.'s Ex. Z at 58. When Sandoval complained that exercise hurt his knee, Dr. Guldseth ordered him a knee brace for added support. *Id.* Sandoval never reached his goal weight during the time that Dr. Guldseth treated him.  Def.'s Decl. ¶ 39.

## B.    Procedural Background

On February 1, 2022, Dr. Guldseth filed a motion for summary judgment. Def.'s Mot. Summ. J., ECF No. 46. On February 2, 2022, the Court notified Plaintiff of the requirements for opposing summary judgment pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc), and *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (en banc). ECF No. 47. Sandoval failed to file an opposition to the summary judgment motion by the February 15, 2022 deadline.[12] The Court issued an order again notifying Sandoval of the requirements for opposing summary judgment and giving him additional time—until March 25, 2022—to file an opposition. ECF No. 52. The Court also directed Dr. Guldseth

---

[11] Sandoval weight dropped slightly to 137 kilograms on May 31, 2018 (Ex. U. at 41) but his weight then began to rise, peaking at 143.5 kilograms on July 31, 2018. Ex. W at 46.

[12] On February 11, 2022, Sandoval filed a Motion for Appointment of Counsel in which he stated he needed assistance from a lawyer to prepare his opposition. *See* ECF No. 49. The Court denied his motion on February 27, 2022. ECF No. 50.

to re-notice and re-serve his summary judgment motion to ensure Plaintiff had received it after his change of address. *Id.* at 2. On March 24, 2022, Sandoval filed a motion for reconsideration of the Court's February 17, 2022 order denying motion for appointment of Counsel. ECF No. 55. He did not, however, file an opposition to the summary judgment motion by the March 25, 2002 deadline or after that date.

For the reasons discussed below, the Court denies Plaintiff's motion for reconsideration, grants Defendant's motion for summary judgment, and directs the Clerk of the Court to enter judgment in favor of Dr. Guldseth.

## II.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). While Sandoval bears the burden of proof at trial, Dr. Guldseth, as the moving party, bears the initial burden of informing a court of the basis for his motion and of identifying the portions of the record that demonstrate an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

If Defendant meets his initial responsibility, the burden then shifts to Sandoval to establish a genuine dispute as to any material facts that exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). To establish the existence of this factual dispute, Sandoval must present evidence in the form of affidavits and/or admissible discovery material to support his contention that a genuine dispute of material fact exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11. "A [p]laintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is

//

based on personal knowledge and sets forth specific facts admissible in evidence." *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14. (9th Cir. 2000).

Finally, district courts must "construe liberally motion papers and pleadings filed by pro se inmates and . . . avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). However, if Plaintiff "fails to properly support an assertion of fact or fails to properly address [Defendant's] assertion of fact, as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . ." Fed. R. Civ. P. 56(e)(2). Plaintiff, as the opposing party, may not rest solely on conclusory allegations of fact or law. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). A "motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'" *Anderson*, 477 U.S. at 249–50; *Hardage v. CBS Broad. Inc.*, 427 F.3d 1177, 1183 (9th Cir. 2006).

When the nonmoving party does not file an opposition to a motion for summary judgment, the Court must still consider the motion on the merits. *See Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013); *see also Martinez v. Stanford*, 323 F.3d 1178, 1183 (9th Cir. 2003).

### III.

### PLAINTIFF'S MOTION FOR RECONSIDERATION

Before discussing Defendant's summary judgment motion, the Court will first address Sandoval's motion for reconsideration of the Court's February 27, 2022 order denying his motion for appointment of counsel. *See* ECF Nos. 55 & 50. While the Federal Rules of Civil Procedure do not expressly provide for motions for reconsideration, this court has "inherent jurisdiction to modify, alter or revoke" any non-final orders. *United States v. Martin*, 226 F.3d 1042, 1048–49 (9th Cir. 2000). The Local Rules for the Southern District of California explicitly permit motions for reconsideration but require that the party seeking reconsideration show what "new or different facts and circumstances are claimed to exist which did not exist, or were not shown, upon such prior application." S.D. Cal. Civil Local Rule 7.1(i). The Court will therefore consider whether either new or different

facts or other equitable considerations favor reconsideration of its prior denial of appointment of counsel.

After reviewing the request for reconsideration, the Court concludes again[13] that Plaintiff has not met the standard required for appointment of counsel. As the Court stated in its February 22, 2022 order, the Constitution provides no right to appointment of counsel in a civil case. *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 25 (1981). Appointment of counsel is only appropriate in "exceptional circumstances" based on "the likelihood of success on the merits" and the difficulty of "the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved." *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986); *Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004); *see also* 28 U.S.C. § 1915(e)(1). In denying the original motion, the Court found Plaintiff had demonstrated neither a likelihood of success on the merits nor a level of complexity warranting appointment of counsel. ECF No. 50 at 2. In seeking reconsideration, Sandoval's fails to present "new or different facts and circumstances" that would alter this analysis. S.D. Cal. Civil Local Rule 7.1(i). For the most part, Plaintiff repeats his previous arguments that he is unversed in the law and cannot afford to hire an attorney. *Compare* ECF Nos. 49, 55. He also adds that he is not fluent in English. *See* ECF No. 55. The Court finds however, based on this current and previous submissions, that Plaintiff has demonstrated an ability to articulate his claims with sufficient clarity. *Id.* Without more, the Court concludes that Plaintiff has not established the requisite "exceptional circumstances" for it to grant appointment of counsel. *See Valdez v. Zhang*, No. 20-cv-0736-JLS-WVG, 2021 WL 2044850, at *1 (S.D. Cal. Apr. 6, 2021) (finding Plaintiff's limited English proficiency was "not an exceptional circumstance" sufficient to warrant appointment of counsel); *Jongpil Park v. Kitt*, No. 19-cv-1551-AWI-HBK, 2021 WL 1103032, at *2 (E.D. Cal. Mar. 22, 2021); *Garces v. Degadeo*, No. 06-cv-1038-LJO-SMS,

---

[13] On February 17, 2022, the Magistrate Judge assigned to this case denied Plaintiff's original motion for appointment of counsel. *See* ECF No. 50 at 2.

2007 WL 1521078, at *1 (E.D. Cal. May 22, 2007). Accordingly, Sandoval's motion for reconsideration is denied.

## IV.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Dr. Guldesth argues that he is entitled to summary judgment because the undisputed facts establish that he provided adequate medical care consistent with Sandoval's Eighth Amendment rights. *See* Def.'s Mem. of P. & A. Supp. Mot. for Summ. J., ECF No. 46 (hereafter "Def.'s P. & A.") at 18–24. Guldseth further argues that, even assuming that Plaintiff had raised a triable issue on the constitutional violation issue, he is entitled to qualified immunity for his actions. *Id.* at 24–25.

### A.    Eighth Amendment Medical Claims

Plaintiff argues that Dr. Guldseth acted with deliberate indifference to his serious medical needs by (1) delaying his referral to an orthopedic surgeon in the time period prior to January 23, 2018; (2) canceling Sandoval's surgery despite Dr. Cham's recommendation; and (3) failing to refer Sandoval to another orthopedic surgeon after his surgery was canceled. FAC ¶¶ 31, 35, 47, 51. The Court will examine the evidence surrounding each of these alleged treatment failures in turn to determine whether there are triable issues of fact regarding constitutionally inadequate medical treatment.

For this Court to find that Sandoval's Eighth Amendment rights were violated by Dr. Guldseth, Sandoval must establish (1) a "serious medical need by demonstrating that [the] failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain" and (2) that Dr. Guldseth's response to his objectively serious medical need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted). The standard for deliberate indifference is subjective, requiring Sandoval show Dr. Guldseth had a "sufficiently culpable state of mind." *See Wilson v. Seiter*, 501 U.S. 294, 297 (1991). That is, Sandoval must show that the course of treatment Dr. Guldseth chose was "medically unacceptable under the circumstances" and that Dr. Guldseth acted "in conscious disregard of an excessive risk"

to Sandoval's health. *See Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). To do so, Plaintiff must prove Dr. Guldseth knew that Plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Put another way, the evidence must show (1) Dr. Guldseth was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed if Sandoval was not promptly referred to a specialist for knee replacement surgery, and (2) Dr. Guldseth actually drew that inference. *Id*. If the evidence merely shows Dr. Guldseth should have been aware of the risk but was not, he has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002) (overruled on other grounds by *Castro v. County of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016)).

### 1. Plaintiff Fails to Rise a Triable Issue that Dr. Guldseth Violated his Constitutional Rights by Delaying his Referral to Surgery

The parties do not dispute that Sandoval's "significant degenerative joint disease," and "cartilage loss" in his right knee constituted a "serious medical need" under the Eighth Amendment. *See generally*, Def.'s P. & A. at 19. Thus, the question before the Court is whether a genuine dispute of material fact exists as to whether Dr. Guldseth was deliberately indifferent to that need in his actions. After reviewing the record in the light most favorable to Plaintiff, the Court concludes that no evidence raises a triable issue that Dr. Guldseth delayed Plaintiff's referral to an orthopedic surgeon "in conscious disregard of an excessive risk" to this health. *See Colwell v. Bannister*, 763 F.3d 1060, 1068 (9th Cir. 2014); *see also Celotex*, 477 U.S. at 325.

Uncontroverted evidence shows Dr. Guldseth did not disregard Sandoval's knee pain or Dr. Casey's surgery recommendation in his treatment decisions prior to referring Sandoval to a specialist. From the outset of their relationship, Dr. Guldseth was responsive to Plaintiff's request for surgery and mindful of Dr. Casey's surgery recommendation throughout this course of treatment. After Sandoval first requested surgery on February 23, 2017, Dr. Guldseth reviewed Dr. Casey's previous surgery recommendation. Noting that

this recommended surgery had ultimately been denied due to Plaintiff's morbid obesity, Dr. Guldseth responded with actions to place Plaintiff on a course where he could receive and benefit from this recommended surgery. *See* Def.'s Ex. D at 9; Def.'s Ex. G at 13; Def.'s Decl. ¶ 9. Because Sandoval continued to have a BMI that made him a poor candidate for this surgery, Dr. Guldseth treated him with pain medication, while counseling him on the weight loss required to proceed with surgery. Over the next five visits, from March 23, 2017 to September 22, 2017, Dr. Guldseth made diet and exercise recommendations and explained that if Sandoval could start losing weight, he would refer him to a specialist again. *See* Def.'s Exs. D–H.

The Court will next examine whether Dr. Guldseth acted with deliberate indifference in maintaining his original treatment plan as Sandoval continued to complain of knee pain and request a surgical treatment over the course of five more visits over nearly six months, before ultimately referring Sandoval to a specialist in September of 2018. The Ninth Circuit has held that "denying, delaying or intentionally interfering with medical treatment can violate the constitution." *Stewart v. Aranas*, 32 F.4th 1192, 1195 (9th Cir. 2022) (quoting *Colwell*, 763 F.3d at 1066). While "[m]ere disagreement with a medical treatment plan is not deliberate indifference, . . . continuation of the same treatment in the face of obvious failure is." *Stewart*, 32 F.4th at 1194.

Based on the evidence in the record, the Court disagrees with Sandoval's allegations that Dr. Guldseth's treatment plan was tantamount to a denial of treatment through delay. In *Stewart*, medical staff did nothing to alter the plaintiff's treatment for two years, despite increasingly alarming symptoms. *Id*. at 1195. Unlike the defendants in *Stewart*, however, Dr. Guldseth did not take a "wait and see" approach to a worsening situation but rather elected to treat Sandoval's knee pain with medication and therapy while Sandoval attempted to lose weight. In the meantime, Dr. Guldseth took several actions to adjust the treatment based on Sandoval's complaints. First, after Plaintiff complained about the side effects of Elavil, Dr. Guldseth took him off it and added Gabapentin for additional pain relief. Def.'s Decl. at ¶ 4, *see also* Def.'s Ex. B at 4. When Sandoval indicated that Tylenol

No. 3 with Codeine was not effective for his pain, Dr. Guldseth put him back on Morphine. Def.'s Ex. G at 13. When Sandoval complained of pain at night Dr. Guldseth ordered Sandoval a wedge pillow so that he could keep his knee elevated when he slept. Def.'s Ex. L at 23. Finally, even though Sandoval failed to lose weight[14] and refused x-rays, Dr. Guldseth nonetheless submitted an RFS on September 22, 2017 for Sandoval to see an orthopedic specialist to be re-evaluated for possible knee surgery. Def.'s Ex. J at 19; Def.'s Decl. ¶ 19. Thus, while Sandoval disagrees with Dr. Guldseth's chosen course of treatment, he has failed to point to any admissible evidence which creates a genuine dispute of material fact that Dr. Guldseth's actions were medically unacceptable or amounted to a conscious disregard for his pain. *See Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) ("[A] difference of opinion between a prisoner patient and prison medical authorities regarding treatment" does not amount to deliberate indifference.) Therefore, Sandoval has failed to raise a triable issue that Dr. Guldseth violated his Eighth Amendment rights in the time period prior to his referral to a specialist on January 23, 2018.

## 2. Plaintiff Fails to Raise a Triable Issue that Dr. Guldseth Violated His Eighth Amendment Rights by Canceling His Surgery

Next, the Court examines whether there is a triable issue on fact regarding whether Dr. Guldseth canceled the surgery recommend by Dr. Cham in deliberate indifference to Plaintiff's serious medical needs. Def.'s P.&A. at 22–23.

The uncontroverted evidence in the record shows that Dr. Cham, the orthopedic surgeon, canceled Sandoval's surgery, not Dr. Guldseth. During Plaintiff's first tele-medicine appointment with Dr. Cham, the doctor indicated that total knee replacement surgery would "likely provide [Sandoval] with . . . pain relief." Def.'s Ex. Q at 33. At a later appointment, Dr. Cham informed Sandoval that his morbid obesity, diabetes and history of infection increased his risk for complications during and after the surgery. Def.'s

---

[14] By September 22, 2017, Sandoval's weight had increased to 130.5 kilograms. Def.'s Ex. I at 17.

14

3:19-cv-1584-JO-RBB

Ex. Q at 33. Dr. Cham canceled the surgery the next day. Def.'s Ex. T at 39. Plaintiff offers no admissible evidence to support his own speculation that Dr. Cham took responsibility for canceling the surgery at Dr. Guldseth's behest. *Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016) (quoting *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment").

Sandoval further alleges in his complaint that Dr. Lee, another RJD doctor, cleared him for surgery on May 3, 2018, superseding Dr. Guldseth's decision to cancel it. FAC ¶ 40. Sandoval has produced no admissible evidence regarding his appointment with Dr. Lee and the clearance for surgery that he purportedly received. In any case, such evidence would not undermine the evidence demonstrating it was Dr. Cham who canceled the surgery, not Dr. Guldseth. Def.'s Ex. T at 39; *see also* Def.'s Ex. R. at 34. Finally, even assuming Dr. Guldseth was responsible for canceling the surgery, Sandoval has failed to present any evidence that the choice to delay his surgery until he lost weight, and therefore became a better candidate for surgery, was taken in conscious disregard for his pain. *See Franklin*, 662 F.2d at 1344; *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Dr. Guldseth has met his burden of showing a lack of evidence that he was responsible for canceling Sandoval's surgery. Because Sandoval has filed no opposition and submitted no evidentiary support for his claim, he has failed raise a triable issue that Dr. Guldseth violated his Eighth Amendment rights by canceling his surgery.

### 3. Sandoval Fails to Raise a Triable Issue That His Eighth Amendment Rights Were Violated After His Surgery Was Canceled

Lastly, the Court turns to whether there is a triable issue of fact as to whether Dr. Guldseth was deliberately indifferent to Sandoval's serious medical needs after his knee surgery was canceled. Def.'s P. & A. at 23–24.

After reviewing the record in the light most favorable to Plaintiff, the Court concludes that no evidence raises no such a triable issue. *See Colwell*, 763 F.3d at 1068; *see also Celotex*, 477 U.S. at 325. The evidence submitted by Defendants indicates that Dr.

Guldseth acted according to his understanding that Plaintiff would not be a safe candidate for surgery until he lost significant weight. On April 27, 2018, Dr. Guldseth explained to Sandoval why his surgery was canceled and counseled him that he would need to lose 50 pounds to become a viable surgery candidate. Def.'s Decl. ¶ 25. Over the course of the next six months while Plaintiff remained in his care, Dr. Guldseth continued to manage Plaintiff's pain while also monitoring him for weight loss. *Id.* at ¶¶ 32–37. Because Plaintiff never approached his weight loss goals, never losing more than 6.8 pounds, *see* Def.'s Ex. Z at 56, Dr. Guldseth never referred him to another specialist. While Sandoval alleges in his FAC that Dr. Guldseth was deliberately indifferent when he refused to refer him to another specialist for a second opinion after his surgery was canceled, *see* FAC ¶¶ 47, 49, he offers no admissible evidence that Dr. Guldseth's decision to wait for Plaintiff to lose weight before referring him again for surgery was "medically unacceptable under the circumstances." *See Colwell*, 763 F.3d at 1068. Indeed, another doctor who saw Sandoval on March 26, 2019[15] noted that "any surgeon is going to be extremely reluctant to do surgery if [Sandoval's] weight is not reduced." Def.'s Ex. AA at 60. Therefore, the Court finds Sandoval has failed to raise a triable issue as to whether Dr. Guldseth was deliberately indifferent in failing to refer Sandoval to another specialist in the months after the surgery was canceled.

For the reasons discussed above, the Court finds Dr. Guldseth is entitled to summary judgment as to Plaintiff's Eighth Amendment claims that he was deliberately indifferent to his serious medical needs and GRANTS his motion pursuant to Fed. R. Civ. P. 56. Because Sandoval has failed to raise a triable issue as to whether Dr. Guldseth violated his Eighth Amendment rights, the Court finds it is unnecessary to determine whether Dr. Guldseth is entitled to qualified immunity based on clearly established law. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).

---

[15] On March 26, 2019, Sandoval's weight was 142.4 kilograms and his BMI was 48. Ex. AA at 60.

## IV.

## CONCLUSION AND ORDER

For the above reasons, the Court DENIES Plaintiff's motion for reconsideration (ECF No. 55) and GRANTS Defendant Guldseth's motion for summary judgment (ECF No. 46) pursuant to Fed. R. Civ. P. 56(a) and DIRECTS the Clerk of the Court to enter judgment in favor of Defendant Guldseth.

**IT IS SO ORDERED**.

Dated:  August 4, 2022

_____

Hon. Jinsook Ohta
United States District Judge

17